**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Case No. 13-cv-00418-RBJ-MEH

HECTOR SOLORSANO AQUINO,

 Plaintiff,
v.

JOHN PEROULIS & SONS SHEEP, INC., a foreign corporation of Colorado,
LOUIS PEROULIS, AND
STANLEY PEROULIS,

 Defendants.

## FIRST AMENDED COMPLAINT

### PRELIMINARY STATEMENT

1. Plaintiff, who is from the highlands of Peru, was brought to the United States to work for Defendant John Peroulis & Sons Sheep, Inc. as an agricultural worker.

2. Shortly after Plaintiff arrived in Colorado, Defendant Louis Peroulis confiscated Plaintiff's immigration documents and refused to return them.  He repeatedly verbally abused and threatened Plaintiff with physical violence.  Given these circumstances, Plaintiff felt that he could not leave the ranch and had no choice but to continue working.

3. Plaintiff brings this action to recover damages for injuries inflicted by Defendants under the Trafficking Victims Protection Reauthorization Act (TVPRA), 18 U.S.C. § 1595, and common law claims under Colorado law for extreme and outrageous conduct, false imprisonment, promissory estoppel, and breach of contract.

## JURISDICTION AND VENUE

4. This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1331 (federal question), 18 U.S.C. § 1595 (TVPRA), and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's related claims under Colorado law.

5. Venue is proper pursuant to 28 U.S.C. § 1391. A substantial portion of the events or omissions giving rise to Plaintiff's claims occurred in Colorado. Defendants Stanley and Louis Peroulis reside in Colorado. Defendant John Peroulis & Sons Sheep, Inc. is registered as a foreign corporation in Colorado.

## PARTIES

**A.   PLAINTIFF**

6. Plaintiff, Hector Solorsano Aquino, is a citizen of Peru and was employed by Defendant John Peroulis & Sons Sheep, Inc., ("Defendant John Peroulis & Sons") as a temporary foreign agricultural worker on an H-2A visa from approximately November 23, 2011, to February 17, 2012.

7. Before coming to the United States, Plaintiff lived in a rural town in the highlands of Peru and had never previously traveled outside of Peru.

8. Plaintiff does not understand, read, or speak English.

**B.   DEFENDANTS**

9. Defendant John Peroulis & Sons is registered as a foreign corporation in good standing in Colorado, with a principal street mailing address in Craig, Colorado.

10. Defendant John Peroulis & Sons was formed under Wyoming law but is presently inactive and administratively dissolved in Wyoming.

11. Defendant John Peroulis & Sons employed Plaintiff to work on its ranch.

12. Defendant John Peroulis & Sons is owned exclusively by family members.

13. Defendant Stanley Peroulis is an individual residing in Colorado.

14. Defendant Stanley Peroulis is both an owner and officer of Defendant John Peroulis & Sons.

15. Defendant Louis Peroulis is an individual residing in Colorado.

16. Defendant Louis Peroulis is both an owner and the registered agent for Defendant John Peroulis & Sons.

17. Defendants Stanley and Louis Peroulis are responsible for the day-to-day ranching operations of Defendant John Peroulis & Sons, including the supervision of workers.

## STATEMENT OF FACTS

18. Defendant John Peroulis & Sons employs temporary foreign workers under the H-2A visa program to work as sheepherders on its ranch.

19. The H-2A program enables employers to hire foreign workers to come to the U.S. to perform temporary agricultural work. 8 U.S.C. § 1188.

20. Regulations found at 20 C.F.R. § 655.100 *et seq.* govern the contents of job offers ("clearance orders") that must be made to both U.S. and temporary foreign workers.

21. As a part of the clearance orders, employers must:

    (a) Pay wages when due;

    (b) Guarantee workers employment for at least three-fourths of the workdays of their work contracts;

(b) Comply with applicable federal, state, and local employment-related laws and regulations;

(c) Provide a copy of the work contract in a language understood by the worker;

(d) Agree not to hold or confiscate workers' passports, visas, or other immigration documents;

(e) Contractually forbid any foreign recruiter whom the employer engages, either directly or indirectly, to seek or receive payments from prospective employees; and

(f) Agree not to "intimidate, threaten, restrain, coerce, blacklist, discharge, or in any manner discriminate against . . . any person who has with just cause" exercised his rights under the employment contract.

22. As a part of the clearance order, employers who hire workers for sheepherding are required to allow workers to have 3 adequate meals per day and required to pay workers, at a minimum, on a monthly basis. U.S. DOL Training and Employment Guidance Letter 32-10 (June 14, 2011).

23. The clearance order as described in paragraphs 21 & 22 is incorporated by regulation and by operation of law into the contracts under which workers are employed. 29 C.F.R. § 501.10(d).

24. On information and belief, Defendant John Peroulis & Sons submitted various clearance orders in accordance with the H-2A program requirements to the U.S. Department of Labor (U.S. DOL) so that it could obtain sheepherders in 2011.

25. On information and belief, with approval from the U.S. DOL, Defendant John Peroulis & Sons petitioned U.S. Citizenship and Immigration Services to obtain H-2A visas for the sheepherders it would employ in 2011 and 2012.

26. In or around February 2011, while in Peru, Plaintiff heard about a job opportunity in Colorado working as a sheepherder from Marciano Zarate (also known as Marciano Zarate Aquino).

27. Soon thereafter, Mr. Zarate provided Plaintiff with the instruction and assistance necessary to obtain the H-2A visa and travel to Defendant John Peroulis & Sons' ranch to work as a sheepherder.

28. On information and belief, Mr. Zarate was directed by Defendants in the dealings with Plaintiff, including Plaintiff's recruitment and/or arrival to the U.S.

29. Mr. Zarate told Plaintiff that it would be a job working with sheep. He told Plaintiff that the bosses were really good people.

30. Plaintiff was informed by Mr. Zarate that his employment with Defendants would last 3 years.

31. Plaintiff decided to proceed with the process to go to the U.S. to work for Defendant John Peroulis & Sons.

32. In order for Plaintiff to get the job with Defendants, Plaintiff had to pay $3,000 to Mr. Zarate.

33. To start the process of getting his job with Defendants, Plaintiff paid Mr. Zarate $1,500.

34. On four occasions, Plaintiff went to the U.S. Consulate in an attempt to get his H-2A visa for Defendant John Peroulis & Sons.

35. Each time Plaintiff went to the U.S. Consulate in Lima, Peru, he incurred travel expenses from his hometown to Lima and had to pay numerous non-recruitment fees, including fees associated with the U.S. Consulate interview, to obtain his visa.

36. Due to no fault of his own, Plaintiff's visa was denied by the U.S. Consulate on three separate occasions.

37. On information and belief, Defendant John Peroulis & Sons had problems getting H-2A visas issued for their ranch during this time period.

38. Mr. Zarate directed Plaintiff each time he was to go to Lima for his appointment at the U.S. Consulate to get his H-2A visa, for which Defendant John Peroulis & Sons had petitioned.

39. In November 2011, Plaintiff went a fourth time to the U.S. Consulate in Lima, Peru, and successfully obtained his H-2A visa for Defendant John Peroulis & Sons.

40. Plaintiff obtained an H-2A visa that was valid from November 14, 2011, through October 16, 2012.

41. After Plaintiff obtained his H-2A visa, Mr. Zarate required Plaintiff to pay the remaining balance of $1,500 to him.

42. On or around November 22, 2011, Mr. Zarate called Plaintiff to inform him that his flight to the U.S. was set and provided him with his flight information.

43. Prior to leaving Peru, Plaintiff had never spoken directly to Defendants.

44. On information and belief, Defendants did not contractually forbid Mr. Zarate from seeking or receiving payments from prospective employees.

45. Plaintiff flew from Lima, Peru, to Panama, to Houston, Texas, to Denver, Colorado, to Grand Junction, Colorado, arriving on November 23, 2011.

46. Plaintiff was picked up by Harry Peroulis, who is the brother of Defendants Louis and Stanley Peroulis.

47. Plaintiff did not receive a copy of his work contract or an employee handbook in Spanish.

48. Approximately two weeks after Plaintiff's arrival, Defendant Louis Peroulis took Plaintiff's passport, visa, and I-94.

49. While he was on the ranch, Defendants did not give Plaintiff his pay every month.

50. Defendants initially took Plaintiff to the desert to take care of sheep.

51. Plaintiff worked with a coworker, Ivan Jesus Aquino, with whom he shared a camper.

52. In or around early January 2012, Plaintiff was moved to Defendants' ranch in Baggs, Wyoming.

53. Plaintiff worked at the ranch with a coworker named Jhonny Lapa, where they were supervised by Defendant Louis Peroulis on a daily basis.

54. Upon information and belief, Defendants had Jhonny Lapa and Ivan Jesus Aquino orient Plaintiff with the work and other expectations Defendants had of their sheepherders, including Plaintiff.

55. Plaintiff was told by Jhonny Lapa that he had to eat his lunch quickly and return to work or else Defendants Stanley and Louis Peroulis would get angry.

56. Plaintiff was also told by Jhonny Lapa that Defendants did not allow their workers to talk to passersby or workers from other ranches.

57. Sometime in January, Plaintiff was working to help cut the wool back from the eyes of the sheep and had been working for many hours without eating lunch. Around 3 p.m., Plaintiff went to his camper to grab a quick snack and then returned to work. A few days later, Defendant Stanley Peroulis told Plaintiff that he had seen Plaintiff eating in his camper and in a raised voice; Defendant Stanley Peroulis told Plaintiff that he was here to work and not to eat.

58. Sometime in January, Plaintiff requested Defendant Louis Peroulis to return his passport. Defendant Louis Peroulis did not respond to this request and did not return Plaintiff's passport.

59. Plaintiff told Defendant Louis Peroulis about the $3,000 he had paid to Mr. Zarate and asked if Defendants were going to reimburse him. Defendant Louis Peroulis said that it was between Plaintiff and Mr. Zarate.

60. On or around January 31, 2012, Plaintiff began to have severe pain throughout his stomach and was unable to sleep.

61. The next morning, Plaintiff told his coworker Jhonny Lapa that he was feeling sick.

62. Later that morning, Defendant Louis Peroulis arrived and Plaintiff began helping Defendant Louis Peroulis unload a truck. Plaintiff was then hit with a severe pain in his stomach and momentarily stopped working and sat down on the ground.

63. Although Plaintiff's coworker Jhonny Lapa told Defendant Louis Peroulis that Plaintiff had been feeling sick, Defendant Louis Peroulis became angry and called Plaintiff a liar.

64. Defendant Louis Peroulis later went to where Plaintiff was resting and Plaintiff told Defendant Louis Peroulis that he wanted to return to Peru and that he wanted his passport back.

65. Defendant Louis Peroulis began yelling and verbally abusing Plaintiff by yelling at him that he was worthless, calling him names, such as coward, "faggot," and "shit."

66. Defendant Louis Peroulis refused to give Plaintiff his passport and told Plaintiff that he could not leave because Defendants had spent too much money for the past two years to get him here and that Plaintiff also owed them for his plane ticket.

67. Plaintiff believed that he had no choice but to continue working for Defendants.

68. Plaintiff wanted to leave the ranch, but did not think he could without his passport, visa, and I-94.  Plaintiff believed that if he left without those documents, he might be put in jail.

69. Jhonny Lapa warned Plaintiff that if he became "marked" by Defendants, they would stop bringing him food.  Plaintiff also learned from Jhonny Lapa that Defendants did not allow their workers to leave the ranch.

70. Plaintiff continued to have pain in his stomach on and off for the next several days, but continued to work because he was fearful of Defendant Louis Peroulis.

71. On or around February 16, 2012, Plaintiff went up to Defendant Louis Peroulis and asked for his documents back.

72. Defendant Louis Peroulis became verbally abusive and screamed about the money that Plaintiff owed him while yelling intermittently in English. He told Plaintiff he was worthless and cursed at him. Defendant said that if he wanted, he would put his rifle to Plaintiff's head. Defendant Louis Peroulis was standing over Plaintiff and wildly waving his arms around while he said this.

73. Plaintiff believed that he was going to be hit by Defendant Louis Peroulis.

74. Defendant Louis Peroulis then walked away and did not return Plaintiff's passport.

75. Before Defendant Louis Peroulis threatened Plaintiff with a rifle, he had put some meat in Plaintiff's camper. Defendant Louis Peroulis appeared to have removed the meat since it was no longer in Plaintiff's camper when he returned to his camper afterwards.

76. Plaintiff was extremely frightened by Defendant Louis Peroulis' threat. Plaintiff knew that Defendant Louis Peroulis had a rifle and he believed that Defendant Louis Peroulis would shoot him.

77. Fearful for his personal safety, Plaintiff packed his bags the following morning and walked towards the highway to get to town.

78. While walking, he called the police. He had some initial difficulty speaking to the dispatch because they only spoke in English, but he kept stating "no English" and was eventually able to communicate to someone in Spanish.

79. The police helped Plaintiff obtain some of his pay and took him to Defendants' business office in Craig, Colorado, to retrieve his passport, visa, and I-94.

80. At Defendants' business office, one of the relatives of Defendants Stanley and Louis Peroulis gave Plaintiff a document to sign.

81. The document was in English and no one translated it to Plaintiff.

82. Plaintiff did not know what the document said but believed that he needed to sign it to obtain his passport, visa, and I-94.

83. Plaintiff was then turned over to the custody of U.S. Immigration and Customs Enforcement but was released that same day, without processing, because there was no basis to detain him.

84. Due to the severe emotional abuse Plaintiff suffered on the ranch, Plaintiff felt fear, anger, and sadness.

85. On April 4, 2012, Plaintiff, through his counsel, sent a letter to Defendant John Peroulis & Sheep requesting the payment of his wages owed and an address to where the wages could be sent.

86. Plaintiff received no response to his letter.

87. Defendant Stanley Peroulis is intimately familiar with the supervisory practices of Defendant Louis Peroulis as they supervise workers jointly and communicate frequently about the workers and ranching operation.

88. Defendants have a history of mistreating their H-2A sheepherders.

89. In 2000, the U.S. DOL filed a case against Defendants, *Herman v. John Peroulis & Sons et al.*, Civ. Case No. 00-M-1873 (D. Colo. Sept. 25, 2000), attached hereto as Exhibit A.

90.     Pursuant to U.S. District Court Order dated March 30, 2001, attached hereto as Exhibits B1-B2, Defendants represented that they would abide by the terms of the "H-2A Compliance Plan," the H-2A provisions and implementing regulations.

91.     In the "H-2A Compliance Plan," Defendants agreed, among other things, to: (1) prohibit acts of workplace violence; (2) provide workers adequate breaks for eating meals; (3) provide workers copies of the work contract and employee handbook; and (4) ensure that workers are in possession of their passports and visas at all times.

92.     As an employee of Defendants, Plaintiff was the intended third-party beneficiary of the agreement made with U.S. DOL in the "H-2A Compliance Plan."

93.     Several other sheepherders employed by Defendants in recent years have commenced actions against Defendants in the U.S. District Court of Colorado based on allegations similar to those of Plaintiff.

94.     In 2010, two sheepherders filed a civil action against Defendants with this Court, *Espejo Camayo et al. v. John Peroulis & Sons et al.*, Civ. Case No. 10-cv-00772 (D. Colo. April 6, 2010). The claims against Defendants in that action include violations of the TVPRA, false imprisonment, outrageous conduct, breach of contract, assault and battery.

95.     Approximately one year later, a subsequent action was brought against Defendants by two additional sheepherders making many of the same allegations as the 2010 case. *Samaniego Fernandez v. John Peroulis and Sons et al.,* 11-cv-01132 (D. Colo. April 20, 2011). On February 28, 2012 the second case was consolidated into *Espejo Camayo et al. v. John Peroulis & Sons et al.*, Civ. Case No. 10-cv-00772 (D. Colo. April 6, 2010).

<u>FIRST CLAIM FOR RELIEF</u>

(Trafficking Victims Protection Reauthorization Act)

96. Plaintiff realleges and incorporates by reference the allegations set forth above.

97. This claim arises against Defendants under the TVPRA.

98. Pursuant to 18 U.S.C. § 1589(a), Defendants knowingly recruited, harbored, provided, or obtained by any means, Plaintiff, for labor or services by means of:

    (1) threats of force;

    (2) threats of serious harm; or

    (3) a scheme, plan, or pattern intended to cause Plaintiff to believe that, if he did not perform such labor or services, that he would suffer serious harm.

99. Pursuant to 18 U.S.C. § 1589(b), Defendants, knowingly or in reckless disregard of the facts, participated in a venture that obtained labor or services by means described in paragraph 98, and thereby knowingly benefited financially.

100. Pursuant to 18 U.S.C. § 1592, Defendants knowingly removed, confiscated, or possessed Plaintiff's immigration documents:

    (a) in the course of a violation of 18 U.S.C. § 1589;

    (b) with intent to violate 18 U.S.C. § 1589; or

    (c) to prevent or restrict or to attempt to prevent or restrict, without lawful authority, Plaintiffs' liberty to move or travel, in order to maintain the labor or services of Plaintiffs, when Plaintiffs were victims of a severe form of trafficking in persons.

101. As a result, Plaintiff suffered injuries and is entitled to recover damages pursuant to 18 U.S.C. § 1595.

## SECOND CLAIM FOR RELIEF

(False Imprisonment Claim Against Defendant Louis Peroulis)

102. Plaintiff realleges and incorporates by reference the allegations set forth above.

103. Defendants intentionally restricted Plaintiff's freedom of movement.

104. Plaintiff's freedom of movement was restricted for a period of time, directly or indirectly, by Defendants through fear.

105. Plaintiff was conscious that his freedom of movement was restricted.

106. Defendants' actions were willful and wanton in that they committed such actions purposefully, heedlessly and recklessly, without regard to the consequences or to the rights and safety of Plaintiff.

107. As a result, Plaintiff has suffered damages.

## THIRD CLAIM FOR RELIEF

(Extreme and Outrageous Conduct Claim Against Defendant Louis Peroulis)

108. Plaintiff realleges and incorporates by reference the allegations set forth above.

109. Defendant Louis Peroulis engaged in a course of conduct that constituted extreme and outrageous conduct against Plaintiff.

110. Defendant Louis Peroulis acted recklessly or with the intent of causing Plaintiff severe emotional distress.

111. Defendant Louis Peroulis' actions were willful and wanton in that they committed such actions purposefully, heedlessly and recklessly, without regard to the consequences or to the rights and safety of Plaintiff.

112. Defendant Louis Peroulis' conduct caused Plaintiff to suffer severe emotional distress.

113. As a result, Plaintiff has suffered emotional injuries and damages.

### FOURTH CLAIM FOR RELIEF

(Assault Claim against Defendant Louis Peroulis)

114. Plaintiff realleges and incorporates by reference the allegations set forth above.

115. Defendant Louis Peroulis intended to place Plaintiff in apprehension of such contact.

116. Defendant Louis Peroulis placed Plaintiff in apprehension of immediate physical contact.

117. The contact appeared to be harmful or offensive.

118. Defendant Louis Peroulis' actions were willful and wanton in that they committed such actions purposefully, heedlessly and recklessly, without regard to the consequences or to the rights and safety of Plaintiff.

119. As a result, Plaintiff suffered damages.

### FIFTH CLAIM FOR RELIEF

(Breach of Contract – Third-Party Beneficiary Claim)

120. Plaintiff realleges and incorporates by reference the allegations set forth above.

121. On March 30, 2001, Defendants agreed to abide by the terms of the "H-2A Compliance Plan," as well as the H-2A provisions and implementing regulations.

122. Plaintiff is a third-party beneficiary to that agreement.

123.    Defendants breached multiple provisions of the agreement by failing to comply with the terms of the "H-2A Compliance Plan," as well as the H-2A regulations.

124.    As a result, Plaintiff suffered injuries.

### SIXTH CLAIM FOR RELIEF

(Breach of Contract Claim against Defendant John Peroulis & Sons)

125.    Plaintiff realleges and incorporates by reference the allegations set forth above.

126.    Defendant John Peroulis & Sons and Plaintiff entered into an employment contract by virtue of Plaintiff's employment under Defendant John Peroulis & Sons' H-2A clearance order.

127.    Plaintiff performed his obligations under this contract until Defendants' conduct rendered his performance impossible.

128.    Defendant John Peroulis & Sons breached the employment contract by failing to comply with the contract's terms and conditions.

129.    As a result, Plaintiff suffered damages.

### SEVENTH CLAIM FOR RELIEF

(Promissory Estoppel Claim against Defendant John Peroulis & Sons)

130.    Plaintiff realleges and incorporates by reference the allegations set forth above.

131.    Defendant John Peroulis & Sons through its agent made promises to Plaintiff regarding the length of his contract.

132.    Defendant John Peroulis & Sons should have reasonably expected that such promises would induce action and/or forbearance by Plaintiff.

133. Plaintiff was in fact induced to act and/or refrained from acting based on such promises made by Defendant John Peroulis & Sons.

134. Defendant John Peroulis & Sons broke its promises to Plaintiff.

135. The agent of Defendant John Peroulis & Sons had apparent authority to make such promises to Plaintiff.

136. As a result, Plaintiff suffered damages.

137. Injustice can only be avoided by the enforcement of Defendant John Peroulis & Sons' promises.

## EIGHTH CLAIM FOR RELIEF

(Colorado Wage Claim Act against Defendant John Peroulis & Sons)

138. Plaintiff realleges and incorporates by reference the allegations set forth above.

139. This claim arises under Colo. Rev. Stat. § 8-4-101 *et seq.*, against Defendant John Peroulis & Sons.

140. Defendant John Peroulis & Sons refused to pay all wages or compensation owed to Plaintiff in accordance with Colo. Rev. Stat. § 8-4-109.

141. Plaintiff made a written demand for wages within 60 days after his separation from Defendant John Peroulis & Sons, as required by Colo. Rev. Stat. § 8-4-109(3), stating in the demand where payment was to be received.

142. Defendant John Peroulis & Sons failed to tender and/or willfully failed to tender the full amount of wages owed within 14 days of receipt of the demand as required by Colo. Rev. Stat. § 8-4-109(3).

143. As a consequence, Plaintiff is entitled to receive wages owed and additional penalties, pursuant to Colo. Rev. Stat. § 8-4-109(3).

## DEMAND FOR JURY TRIAL

144. Plaintiff demands a trial to a jury for all issues so triable.

## PRAYER FOR RELIEF

145. Plaintiff respectfully requests that this Court enter an order:

   a) accepting jurisdiction of this case;

   b) declaring that Defendants violated the TVPRA, enjoining Defendants from continued violations, and awarding Plaintiff damages and reasonable attorneys' fees;

   c) granting a declaratory judgment against Defendant Louis Peroulis on Plaintiff's claims of extreme and outrageous conduct, false imprisonment, promissory estoppel, and breach of contract, enjoining Defendant Louis Peroulis from continued violations, and awarding Plaintiff damages;

   d) awarding Plaintiff reasonable attorney's fees and costs;

   e) awarding Plaintiff pre-judgment and post-judgment interest; and

   f) granting such other relief as this Court deems just and proper.

This 22nd day of April, 2013.                              Respectfully Submitted,

   s/Jenifer C. Rodriguez
Jenifer C. Rodriguez
**Colorado Legal Services**
**Migrant Farm Worker Division**
1905 Sherman Street, Suite 400
Denver, CO 80203
Tel. (303) 866-9366

Fax (303) 830-7860
jrodriguez@colegalserv.org

_s/Jennifer J. Lee_____
Jennifer J. Lee
**Colorado Legal Services**
**Migrant Farm Worker Division**
1905 Sherman Street, Suite 400
Denver, CO 80203
Tel. (303) 866-9366
Fax (303) 830-7860
jlee@colegalserv.org